**Nathan B. FISCHER, Plaintiff,**

v.

**INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION et al., Defendants.**

**No. 74 C 576.**

United States District Court, E. D. New York.

March 20, 1975.

Avrom S. Fischer, Brooklyn, N. Y., for plaintiff.

Wormser, Kiely, Alessandroni, Mahoney & McCann, New York City, for ITT.

Debevoise, Plimpton, Lyons & Gates, New York City, for Black and Friedman.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Lazard Freres & Co. and Rohatyn.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants, Lazard Freres & Co. and Felix G. Rohatyn, have made a motion for an order pursuant to Rule 56 of the Federal Rules of Civil Procedure granting summary judgment dismissing the complaint on the ground that the claims of the plaintiff contained therein are time barred under Section 13 of the Securities Act of 1933 (15 U.S.C.A. § 77m).

Plaintiff's complaint which was filed on April 15, 1974, alleges that the de-fendants violated Section 11 of the Securities Act of 1933 (15 U.S.C.A. § 77k) in connection with the registration and public offering of one million shares of Cumulative Preferred Stock, $5.00 Convertible Series O of International Telephone and Telegraph Corporation ("ITT"), which plaintiff claims was sold to the public on April 27, 1971.

Plaintiff's first claim in his complaint is on behalf of himself and his second claim purports to be brought on behalf of himself and "all persons who purchased said securities that were the subject of the aforesaid registration statement from the defendants or their agents pursuant to Rule 23(b)(3) F.R. C.P. and have sustained a loss."

In his claims plaintiff alleges that he believes that the Internal Revenue Service ruling that the acquisition by ITT of Hartford Fire Insurance Company would not result in a capital gains tax being imposed upon Hartford shareholders who exchanged their Hartford stock for ITT securities "was obtained by a misleading application." Plaintiff further alleges that the aforesaid registration statement was false and misleading in that it omitted material facts, namely, that the application for the aforesaid Internal Revenue Service ruling was obtained on the basis of a misleading application and that accordingly the aforsaid ruling was subject to revocation with resulting adverse publicity to ITT and a potential liability of $35,000,000 to $40,000,000 to Hartford stockholders who exchanged their stock for ITT securities.

Plaintiff also alleges that he purchased five shares of the ITT Series O stock on February 15, 1973 for $464.04 and that he did not know of the omission of the aforesaid material facts and could not have known thereof in the exercise of reasonable diligence "since the revocation of the aforesaid ruling was not even announced until March of 1974."

For himself plaintiff claims damages in the amount of the decline in the value

of his five shares from $464. to approximately $265 and for the class the total amount of "claims proved by all members" in addition to "an amount sufficient to reimburse plaintiff" for his "reasonable expenses" and for his "reasonable attorneys and accountants fees".

Defendants claim that since plaintiff's complaint was filed more than three years after the ITT Series O stock "was bona fide offered to the public", plaintiff's claims are time barred.

Defendants' statement filed pursuant to Rule 9(g) recites the pertinent facts as follows:

"1. The complaint in this action was filed with this Court on April 15, 1974.

"2. In 1971, Lazard and Kuhn, Loeb & Co., another New York investment banking firm (hereinafter referred to as the 'Representatives') managed a group of investment banking firms which acted as underwriters of the offering of one million shares of International Telephone and Telegraph Corporation Cumulative Preferred Stock, $5.00 Convertible Series O (the 'Series O Stock'). Additionally, Lazard participated in the underwriting in the amount of 110,250 shares.

"3. On March 18, 1971, International Telephone and Telegraph Corporation ('ITT') filed with Securities and Exchange Commission ('SEC') a Registration Statement covering the one million shares of Series O Stock.

"4. Subsequent to the filing of the Registration Statement and before its effective date, Lazard and the other underwriters orally solicited from various potential investors 'indications of interest' in the purchase of shares of the Series O Stock when, as and if they were issued. Additionally, Lazard and the other underwriters distributed to various selected dealers and banking institutions, under cover letters dated March 18, 1971, copies of the Preliminary Prospectus. By April 9, 1971, the Representatives had effected distribution of in excess of 16,000 copies of the Preliminary Prospectus to prospective underwriters, selected dealers, insurance companies and financial institutions.

"5. On April 13, 1971, immediately following the execution of the Purchase Agreement between the underwriters and ITT (relating to the purchase of the Series O Stock by the underwriters) and the Agreement Among Underwriters (between the Representatives and each of the underwriters), ITT filed with the SEC the final price amendment to the Registration Statement. At 10:30 A.M. on the same date, the SEC issued an order declaring the Registration Statement effective. Immediately thereafter, the final Prospectus was issued.

"6. Also on April 13, 1971, after receiving notification of the effectiveness of the Registration Statement, Lazard solicited and obtained 'firm indications of interest' from those investors who had previously indicated interest in purchasing shares of Series O Stock. Lazard then transmitted to those investors who made firm commitments—including 36 institutions, 2 individuals and 1 dealer—written confirmations of sale together with copies of the final Prospectus. By the close of the business day on April 13, 1971, all of the 110,250 shares of Series O Stock which represented Lazard's participation in the offering were committed by firm contracts of sale. In fact, by the close of the business day on April 14, 1971, all of the one million shares which constituted the entire Series O offering had been sold; and the price and trading restrictions contained in the Agreement Among Underwriters had been terminated."

The only issue posed by the plaintiff on the argument of the motion was whether the ITT Series O Stock had been "bona fide offered to the public" within the meaning of Section 13 of the Act (15 U.S.C.A. § 77m), more than

three years prior to April 15, 1974, the date of the commencement of this action; the plaintiff's contention being that "the alleged offer contained in the prospectus was only a conditional offer to sell Series O Stock and not a definitive offer to sell Series O Stock." and that there was "no evidence in the record to indicate when the prospectus itself was actually received by the public."

In essence, plaintiff's claim is that since the offer contained in the final prospectus was subject to the following "qualification" it was not a "bona fide offer" to the public within the meaning of the statute:

"The shares of Preferred Stock are offered by the several underwriters subject to prior sale and to withdrawal, cancellation or modification of the offer without notice when, as, and if issued and accepted by them, and subject to the approval of counsel for the Underwriters and counsel for ITT; and the Underwriters reserve the right in their discretion to reject any order for the purchase of shares in whole or in part. It is expected that delivery of certificates for the Preferred Stock will be made at the office of Kuhn, Loeb & Co., 40 Wall Street, New York, N. Y. 10005, on or about April 27, 1971."

Section 77m of Title 15, U.S.Code, provides:

"No action shall be maintained to enforce any liability created under section 77k [§ 11] or 77l(2) [§ 12(2)] of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(1) [§ 12(1)] of this title, unless brought within one year after the violation upon which it is based. *In no event shall any such action be brought to enforce a liability created under section 77k [§ 11] or 77l [§ 12(1)] of this title more than three years after the security was bona fide*

*offered to the public,* or under section 77l(2) [§ 12(2)] of this title more than three years after the sale." (Emphasis added)

Section 80a–24(e)(3) of Title 15 provides in part that:

"For the purposes of section 77k of this title, the effective date of the latest amendment filed pursuant to this subsection or otherwise shall be deemed the effective date of the registration statement with respect to securities sold after such amendment shall have become effective. For the purposes of section 77m of this title, no such security shall be deemed to have been bona fide offered to the public prior to the effective date of the latest amendment filed pursuant to this subsection."

Section 77b of Title 15 provides in pertinent part that:

"The term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, for value. The term 'offer to sell', 'offer for sale', or 'offer' shall include every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value."

 The term "offer" is defined as including "every attempt or offer to dispose of, or solicitation of an offer to buy" a security for value. Under this definition it makes little or no difference whether the offer contained in the prospectus is a qualified one so long as it amounts to an attempt to dispose of the security or a "solicitation of an offer to buy", which at the very least it clearly is. The traditional concepts contained in the law of contracts and argued by the plaintiff would not appear to control herein. (*Cf:* Loss, Securities Regulation, Student Ed. p. 994).

From every indication in the authorities, the crucial date, i. e., the date when a security is first offered to the public within the meaning of § 77m of Title 15, is not earlier than the effective date of last amendment to the registration

statement and not later than the date when the prospectus is released to, or other solicitation is made of, the public. See Kramer & Harrison v. Scientific Control Corp., 352 F.Supp. 1175, 1176 (E.D.Pa.1973); and III Loss, Securities Regulation, p. 1742 (2d Ed.1951). In this case both such events occurred on April 13, 1971, more than three years prior to the commencement of the within action.

 Under such circumstances, plaintiff's claims would clearly appear to be time barred and accordingly defendants' motion is granted to the extent that plaintiff's complaint is dismissed, without prejudice, however, to his right to serve and file an amended complaint (for which relief he asked in his opposition papers and by a cross motion dated December 11, 1974) alleging violations of Section 17(a) of the Securities Act, Sections 9 and 10 of the Securities Exchange Act, and Rule 10b–5 issued by the Securities and Exchange Commission.

So ordered.