Jerome **BRESSON** and Franklin M. Brown, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

THOMSON McKINNON SECURITIES, INC., Defendant.

No. 85 Civ. 1179 (GLG).

United States District Court, S.D. New York.

July 22, 1986.

Jarblum, Solomon & Fornari, P.C., New York City (James D. Fornari, James Schwartz, Donald Eng, of counsel), Greenfield & Chimicles, Haverford, Pa., (Nicholas E. Chimicles, Kenneth A. Jacobsen, Brenda M. Nelson, of counsel), Absill, Porter, Churchill & Nellis, Atlanta, Ga. (J. Alexander Porter, Glenn A. Delk, Gail Tusan Joyner, of counsel), Klovsky, Kuby & Harris, Philadelphia, Pa., (Sidney B. Klovsky, Paul N. Minkoff, of counsel), for plaintiffs.

Hall, McNicol, Hamilton & Clark, New York City (Thomas A. Dubbs, Kenneth V. Handal, Ellen G. Margolis, of counsel), for defendant.

## OPINION

GOETTEL, District Judge:

This is one of at least six class action suits now pending in the federal district courts against brokerage firms that sold

limited partnership interests in the oil and gas income funds of the Petro-Lewis Corporation ("Petro-Lewis").

From 1970 to 1983, Petro-Lewis was the nation's largest seller of oil and gas income funds. Petro-Lewis acquired oil and gas properties, which it packaged and sold as limited partnerships. It managed the partnerships as general partner. In toto, Petro-Lewis sold in excess of $3 billion of partnership interests.

When the value of the Petro-Lewis partnerships began to weaken, a series of class action suits were instituted against Petro-Lewis, two of its subsidiaries, and seven of its directors. The various plaintiffs raised numerous claims under the securities laws. In particular, they alleged that Petro-Lewis had issued false and misleading prospectuses, shareholder and investor reports, press releases, and other documents. *See In re Petro-Lewis Securities Litigation,* [1984–85 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 91,899 (D.Colo.1984). These class actions were settled for more than $100 million. Shortly after the settlement, several actions were commenced against brokerage firms that sold Petro-Lewis partnerships. Plaintiff Jerome Bresson ("Bresson") brought this putative class action against Thomson McKinnon Securities, Inc. ("Thomson McKinnon") on February 13, 1985.

Thomson McKinnon is a New York corporation that acts as an underwriter, participating distributor, dealer, and broker of, *inter alia,* corporate securities. It conducts its sales activities through thousands of account executives and branch offices across the United States. Thomson McKinnon marketed Petro-Lewis partnership interests under selling agreements with Petro-Lewis's Securities Corporation subsidiary. It received commissions of up to seven percent on the sale of each limited partnership interest.

Bresson, a Pennsylvania citizen, purchased a $50,000 limited partnership interest in Petro-Lewis's "Deferred Income Program" from Thomson McKinnon on June 24, 1981. In his complaint, Bresson alleged violations of sections 11 and 12(2) of the

Securities Act of 1933, 15 U.S.C. §§ 77k & 77*l*(2), and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10 (1985) (collectively "section 10"), as well as pendent state claims for fraud, negligence, and breach of fiduciary duty. After the defendant moved to dismiss the complaint, but before the motion could be heard, an amended complaint was filed adding an additional named plaintiff, Franklin M. Brown ("Brown") and an additional claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 (1982). Brown, a California citizen, purchased limited partnerships from Thomson McKinnon on June 18, 1979, June 26, 1980, and January 13, 1983. He also purchased a $50,000 interest in the Deferred Income Program.

The defendant has now renewed its original motions to dismiss, and both parties have agreed to treat those motions as addressed to the amended complaint. The defendant has also filed a supplemental motion to dismiss. The Court has before it the following panoply of motions: (1) motions to dismiss the plaintiffs' section 11 and 12(2) claims for failure to state a claim on which relief can be granted; (2) motions to dismiss the plaintiffs' section 11 and 12(2) claims as time-barred; (3) a motion to dismiss the section 10, common law fraud, and RICO claims for failure to plead fraud with the particularity that Fed.R.Civ.P. 9(b) demands; (4) a motion to dismiss plaintiff Bresson's section 10 claim as timebarred; (5) a motion to dismiss the plaintiffs' claim for negligent misrepresentation; and (6) a motion to dismiss the state claims for lack of subject matter jurisdiction.

For the reasons stated below, the motions are granted in part and denied in part.

I. Discussion

   A. The Section 11 and Section 12(2) Claims

   1. Motions to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

Section 12(2) provides a private civil cause of action against persons who sell or

offer to sell securities on the basis of a misleading prospectus or oral communication.[1] The "plaintiffs can sue not only their immediate sellers under section 12(2) but also those who substantially participated in the transaction." *Klein v. Computer Devices, Inc.*, 602 F.Supp. 837, 840 (S.D.N.Y.1985). Section 11 creates a private civil cause of action in favor of a person who acquires a security pursuant to a misleading registration statement.[2] The plaintiffs assert their section 11 claims against Thomson McKinnon both as an underwriter, *see* 15 U.S.C. § 77k(a)(5) (1982), and as an aider and abettor. The defendant moves, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss each of the claims under sections 11 and 12(2) for failure to state a claim on which relief can be granted.

■ The motion to dismiss the claim for aiding and abetting a section 11 violation is granted. Although it may once have been the law in this district that a plaintiff could state a claim for aiding and abetting a section 11 violation, *see In re Caesars Palace Securities Litigation*, 360 F.Supp. 366 (S.D.N.Y.1973), the clear trend and the weight of recent authority in the district courts is to the contrary. *See In re Flight Transportation Corp. Securities Litigation*, 593 F.Supp. 612, 616 (D.Minn.1984); *Hagert v. Glickman, Lurie, Eiger & Co.*, 520 F.Supp. 1028, 1034 (D.Minn.1981); *McFarland v. Memorex Corp.*, 493 F.Supp. 631, 642 (N.D.Cal.1980); *In re Equity Funding Corp. of America Securities Litigation*, 416 F.Supp. 161, 181 (C.D.Cal.

1976). We find these opinions well reasoned and adopt their holding as our own.

■ The amended complaint also fails to allege several crucial elements of a primary violation of sections 11 or 12(2). The complaint does not specify the particular registration statements that underlay the plaintiffs' purchases. Without such an allegation, a section 11 claim cannot survive a motion to dismiss. *Klein v. Computer Devices, Inc.*, 591 F.Supp. 270, 273 (S.D.N.Y. 1984), *modified on other grounds*, 602 F.Supp. 837 (S.D.N.Y.1985); *Lorber v. Beebe*, 407 F.Supp. 279, 285–86 (S.D.N.Y. 1976). Absent some specification of the particular defective registration statements that formed the basis for the plaintiffs' purchases, the section 12(2) claims must be dismissed as well. *Klein, supra*, 591 F.Supp. at 277–78. The absence of an offer to tender the securities also dooms this claim. *Anisfeld v. Cantor Fitzgerald & Co.*, 631 F.Supp. 1461, 1464 (S.D.N.Y.1986). Since the defects in the primary section 11 and 12(2) claims can be corrected by repleading, we proceed to consider the defendant's motion to dismiss those claims as time-barred.

2. Motions to Dismiss the Section 11 and Section 12(2) Claims as Time-Barred

■ Section 13 of the Securities Act of 1933, 15 U.S.C. § 77m (1982), supplies the applicable statute of limitations for section 11 and for section 12(2). Section 13 bars actions

---

1. Section 12(2) provides that

Any person who ... offers or sells a security ... by ... means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading ... shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77*l*(2) (1982).

2. Section 11(a) provides that

In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security ... may, either at law or in equity, in any court of competent jurisdiction, sue [five categories of people named herein].

15 U.S.C. § 77k (1982).

unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence.... In no event shall any such action be brought to enforce a liability created under section [11] of this title more than three years after the security was bona fide offered to the public ..., or under section [12(2)] ... more than three years after the sale.

15 U.S.C. § 77m (1982). This statute of limitations is two-pronged, requiring that the claim be brought within three years of the sale or registration *and* within one year of the actual or constructive discovery of the omission or misrepresentation. *Homburger v. Venture Minerals, Inc.,* [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,858, at 94,425–26 (S.D.N.Y. Nov. 3, 1982). Compliance with section 13 is an essential substantive ingredient of a private cause of action under section 11 or section 12(2). *Brick v. Dominion Mortgage & Realty Trust,* 442 F.Supp. 283, 291 (W.D.N.Y.1977). Consequently, the "[p]laintiffs must affirmatively plead sufficient facts to demonstrate that the requirements of section 13 have been satisfied; otherwise their claims are subject to dismissal." *Id.* at 289–90.

Nowhere in the complaint have the plaintiffs affirmatively pleaded their compliance with section 13. They have not alleged compliance with either the three-year or one-year requirements. Nor have they alleged when they discovered the fraud, how they diligently sought discovery, and why the discovery was not made earlier. Both infirmities provide sufficient grounds for dismissing the section 11 and 12(2) claims with leave to replead. *Homburger v. Venture Minerals, Inc., supra,* [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) at 94,427–28. Since, again, repleading is a simple matter, we proceed to consider whether the section 11 and 12(2) claims, viewed in a light most favorable to the plaintiffs, *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99,

101–02, 2 L.Ed.2d 80 (1957), are barred by the applicable statute of limitations.

### a) The Three-Year Time Period

█ The three-year time limit in section 13 is an absolute outer limit. *Brick v. Dominion Mortage, supra,* 442 F.Supp. at 289–90 (section 11); *Homburger, supra,* [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) at 94,426 (section 12(2)). Only plaintiff Brown's January 1983, purchase, and the corresponding registration statement, were within the three year period. Brown's three other investments and Bresson's June 1981 purchase all occurred at least three years before the complaint was filed on February 13, 1985.[3] The corresponding registration statements were, of course, issued outside of the three year window.

The plaintiffs, nevertheless, maintain that the three year limit does not bar their claims based upon the pre–1982 purchases. They first assert that post–1982 purchases of Petro-Lewis partnerships by certain unidentified class members save the named plaintiffs' claims. This argument is patently ludicrous. The Court cannot now consider the claims of unidentified members of a class not yet certified. The claims of the named plaintiffs must stand or fall on their own. *Cf.* 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 23.90, at 23–557 (1985) ("if the statute of limitations has run on a claim prior to the commencement of suit, it is not revived by the class action").

The plaintiffs also contend that the partnerships sold before 1982 were part of an "integrated offering," and that the three year limitations period commenced to run upon the conclusion of that offering in 1984. The integrated offering doctrine does not, in our view, bear on section 13.

The Securities Exchange Commission ("SEC") developed the concept of an "integrated offering" to aid the determination of whether a sale of securities is part of a private offering exempted by section 4(2) of the Securities Act of 1933, 15 U.S.C.

---

**3.** Brown's claims relate back to the date of the filing of the original complaint. *See* Fed.R. Civ.P. 15(c); 3 J. Moore, *Moore's Federal Practice* ¶ 15.15[4.–2] (1985).

§ 77d(2) (1982), from the registration requirements of that Act. *See* 17 C.F.R. § 230.447 (1985). The courts have often applied the doctrine in that context to gauge the size and scope of an offering. That determination, in turn, guides the calculation of the number of persons or entities deemed to have been offered a particular security. *See, e.g., SEC v. Murphy,* 626 F.2d 633 (9th Cir.1980); *Doran v. Petroleum Management Corp.,* 545 F.2d 893 (5th Cir.1977); *Livens v. William D. Witter, Inc.,* 374 F.Supp. 1104 (D.Mass.1974).

Two courts have applied a somewhat altered version of the SEC's "integrated offering" concept to toll the applicable statute of limitations in a section 10 action. *Goodman v. Epstein,* 582 F.2d 388, 409–414 (7th Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); *Hill v. Der,* 521 F.Supp. 1370, 1386 (D.Del. 1981). A third decision applying the doctrine in a section 10 action, *Kennedy v. Tallant,* [1976–77 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 95,779 at 90,823–24 (D.Ga.1976), was affirmed on other grounds, *Kennedy v. Tallant,* 710 F.2d 711, 716–17 (11th Cir.1983), with the Court of Appeals expressly declining to consider the doctrine.

Although one district judge has held implicitly that the "integrated offering" doctrine applies to claims under section 12(2), *Currie v. Cayman Resources Corp.,* 595 F.Supp. 1364, 1378 (N.D.Ga.1984), that *ipse dixit* is directly contrary to Judge Haight's explicit and persuasive finding that the doctrine does not impact upon section 13. *Homburger, supra,* [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) at 94,426 & n. 3. *See also Hayden v. McDonald,* 742 F.2d 423, 436–37 (8th Cir.1984), (doctrine is inapplicable to statute of limitations under the Minnesota Blue Sky Act).

Given that section 10 is broader in scope than either section 11 or section 12(2), *Goodman v. Epstein, supra,* 582 F.2d at 414, and given the strict construction typically afforded section 13, *see Fischer v. International Telephone and Telegraph Corp.,* 391 F.Supp. 744 (E.D.N.Y.1975), expansion of the law to permit application of the "integrated offering doctrine" to this case is inappropriate. "The integration theory, although appropriate to determine whether the seller's total effect on the marketplace merits any governmental regulation, should not be used to alter the statute of repose on private legal actions which flow from that governmental regulation once properly imposed." *Hayden v. McDonald, supra,* 742 F.2d at 437.

Moreover, the allegations in the complaint do not even hint at an "integrated offering." Indeed, they negate that possibility. Paragraph 5 refers to "specified Petro-Lewis partnership programs." Amended class action complaint ("complaint") ¶ 5(b).

Thus, section 13's three-year limit bars all but Brown's claim arising out of his January 1983 investment. That claim is barred by the one-year provision in section 13.

### b) The One-Year Time Period

█ In order to satisfy section 13's one-year requirement,

the complaint must set forth the time and circumstances of the discovery of the fraudulent statements, the reason why discovery was not made earlier if more than one year has elapsed since the fraudulent conduct occurred, and the diligent efforts which plaintiff undertook in making or seeking such discovery.

*Hill v. Der, supra,* 521 F.Supp. at 1389. *See Ingenito v. Bermec Corp.,* 441 F.Supp. 525, 553–55 (S.D.N.Y.1977) (scrutinizing section 11 and 12(2) claims); *Homburger, supra,* [1982 Transfer Binder] Fed.Sec.L. Rep. (CCH) at 94,427 (applying same pleading requirements to a section 12(2) claim); *Brick v. Dominion Mortgage & Realty Co., supra,* 442 F.Supp. at 292 (same). The plaintiff must ultimately establish that he filed suit within one year of the point when he had enough facts to be on inquiry notice of the potential claim. *Ingenito v. Bermec, supra,* 441 F.Supp. at 554.

The test as to when [securities] fraud should with reasonable diligence have been discovered is an objective one.

*Warner v. Republic Steel Corp.*, 103 F.Supp. 998, 1009 (S.D.N.Y.1952)....
"[W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Higgins v. Crouse*, 147 N.Y. 411, 416, 42 N.E. 6 (1895).

*Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir.1983).

The objective test mandates a dismissal of a plaintiff's section 11 or 12(2) claim where, as here, these pleadings disclose facts sufficient to have placed the plaintiff on inquiry notice of the alleged fraud prior to the one-year cutoff. The complaint herein alleges facts sufficient to have placed Brown on inquiry notice of the fraud underlying his section 11 and 12(2) claims by February 6, 1984, more than one year before the complaint was filed. Until that time, according to the complaint, Petro-Lewis had issued numerous, misleading documents that misstated its financial position, the nature of its partnerships, and its business prospects. Among these documents was the prospectus pursuant to which Brown purchased his 1983 partnership.[4] It, too, allegedly misrepresented the highly leveraged nature of the partnerships and failed to disclose their inherent risks. A February 6, 1984 announcement shattered any illusions perpetrated by this prospectus and the other Petro-Lewis communications. Among other things, Petro-Lewis revealed projected losses, the loss of its investment banker, a drastic reduction in its work force, the planned sale of up to 33% of its reserves, the termination of all partnership sales, and a reduction in the yield of and repurchase price offered for many of its partnerships. At a minimum, this announcement notified reasonable investors in any of Petro-Lewis's partnerships of the potential for misstatements and omissions in the above-noted communications.

That Petro-Lewis specifically excluded Brown's 1983 partnership from the announced cutbacks, and reassured investors in that partnership of the soundness of their investment does not alter our conclusion. Although the post–1982 investments were to suffer no immediate consequences, Brown, like all other plaintiffs, was put on notice by the February 6 announcement of possible infirmities in the above-noted communications.

In arguing that he could not have discovered the fraud, had he inquired of it on February 6, the plaintiff Brown apparently misperceives the nature of the "inquiry notice" requirement.[5] The plaintiff need only have known of the possibility of fraud, not of the actual nature of the alleged fraud. The plaintiff's own pleadings make clear that, as of February 6, 1984, Brown knew, or should have suspected, that the prospectus, registration statement, and other Petro-Lewis communications pursuant to which he purchased his 1983 partnership interest, contained material misrepresentations.

The plaintiff's conclusory allegations of "fraudulent concealment," *see, e.g.,* Complaint ¶ 79, do not satisfy the requirements of Fed.R.Civ.P. 9(b), *see infra* pp. 346–347, and cannot toll the applicable one-year period. *See Armstrong v. McAlpin, supra,* 699 F.2d at 90 (conclusory allegations of fraudulent concealment do not toll

4. The complaint details a single Petro-Lewis prospectus, dated June 19, 1981, and notes that "[s]tatements made in [that] prospectus were substantially identical to statements made in all subsequent prospectuses issued by Petro-Lewis between 1981 and 1984 in connection with the marketing and sale of the partnership interests." Complaint ¶ 18. These presumably include the prospectus pursuant to which Brown purchased his 1983 partnership interest.

5. The plaintiffs note that Thomson McKinnon's colleagues in the brokerage industry neither understood nor appreciated the consequences of Petro-Lewis's February 6, 1984 announcement. In so arguing, not only do they improperly rely on matters outside of the pleadings, but they also undercut their own fraud claims against Thomson McKinnon.

section 10(b) limitations period). If the plaintiff claims that Thomson McKinnon fraudulently concealed the fraud giving rise to the section 11 and 12(2) claims, "he could have alleged simply and directly the pertinent facts. [He] did not!" *Id.* The motion to dismiss the section 11 and 12(2) claims as time-barred is granted. *Cf. Intre Sport Ltd. v. Kidder, Peabody & Co.*, 625 F.Supp. 1303, 1311 (S.D.N.Y.1985) (granting summary judgment on a section 12(2) claim when the plaintiff's "own allegations in the amended complaint establish[ed] that the statute of limitations bar[red] the claim.")

### B. The Section 10, Common Law Fraud, and RICO Claims

#### 1. Motions to Dismiss for Failure to Plead Fraud with Partularity

The defendant moves, pursuant to Fed.R. Civ.P. 9(b), to dismiss each of the plaintiffs' claims sounding in fraud. Rule 9(b) provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Fed.R. Civ.P. 9(b). Mere conclusory allegations that the defendant's conduct was fraudulent are not enough. *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982). Instead, the complaint must allege with some specificity the act or statements constituting the fraud. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Although in some circuits, the courts require only that the defendant be on notice of the fraud alleged, the courts in this district are considerably stricter. Here, the plaintiff must specify

1) precisely what statements were made in what documents or oral representations or what omissions were made, and 2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, 3) the content of such statements and the manner in which they misled the plaintiff, and 4) what the defendant obtained as a consequence of the fraud.

*Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978). These requirements, consistently adopted and enforced in this district, *see, e.g., Terra Resources I v. Burgin*, [Current Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 92,703, at 93,434 (S.D. N.Y.1986) (Sweet, J.); *Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. 1241, 1266 (S.D.N.Y.1984) (Goettel, J.); *Gonzales v. Paine, Webber, Jackson & Curtis, Inc.*, [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,867, at 94,515 (S.D.N.Y.1982) (Werker, J.); *Brew v. Philips, Appel & Walden, Inc.*, [1980 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 97,697, at 98,665 (S.D. N.Y.1980) (Lowe, J.), *aff'd*, 661 F.2d 907 (2d Cir.1981); *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1088 (S.D.N.Y. 1977) (Gagliardi, J.), *aff'd without opinion*, 636 F.2d 1201 (2d Cir.1980); *Altman v. Knight*, 431 F.Supp. 309, 314 n. 4 (S.D.N.Y. 1977) (Cannella, J.); *Rich v. Touche Ross & Co.*, 68 F.R.D. 243, 246 (S.D.N.Y.1975) (Brieant, J.), were reaffirmed by the Second Circuit in *Goldman v. Belden*, 754 F.2d 1059, 1069–70 (2d Cir.1985). According to that opinion, the specific allegations that we require are necessary to give the defendant "notice of precisely what he is charged with."[6] *Id.* at 1070.

---

**6.** Rule 9(b) actually serves three aims. First, it gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests, thus enabling the defendant to prepare a defense. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Second, it protects the defendant from harm to his reputation or goodwill that might result from charges of fraud. *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982); *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972). Third, it minimizes the number of strike suits. *Ross v. A.H.*

*Robins Co., supra*, 607 F.2d at 557. Thus, Rule 9(b) "inhibits the filing of a complaint as a pretext for discovery of unknown wrongs." *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1087 (S.D.N.Y.1977), *aff'd without opinion*, 636 F.2d 1201 (2d Cir.1980).

Recognizing these policies, courts generally dismiss allegations of fraud based on information and belief. *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972). However, a fraud pleading that concerns matters peculiarly within the adverse party's knowledge will satisfy the Rule

### a) The Primary Fraud Claims

█ The defendant first asserts that the complaint fails to particularize the conduct underlying the alleged common law fraud and securities fraud. We agree.

The complaint does specify several misrepresentations and omissions. For example, paragraph 37 states that Thomson McKinnon assured the plaintiffs that Petro-Lewis's statements were worthy of trust and belief, that Petro-Lewis was in sound operating condition, and that Petro-Lewis partnerships were good investments. Likewise, paragraph 40 alleges that Thomson McKinnon falsely characterized Petro-Lewis's partnerships as good investments. The complaint also alleges that the defendant failed to disclose Petro-Lewis's deteriorating financial condition and the excessive leveraging of partnership properties. Missing, however, is any allegation of precisely what statements were made, and the time and place of their making. In addition, although the amended complaint acknowledges that Thomson McKinnon "maintain[s] offices throughout the United States and employ[s] thousands of account executives," Complaint ¶ 33, it does not identify the Thomson McKinnon employee or employees who made the alleged misrepresentations or omissions. The plaintiffs' failure to specify these account executives or employees prejudices the defendant's ability to respond adequately to the complaint.[7] To the extent that written documents and communications contain the alleged misrepresentations and omissions, the plaintiffs fail to specify those documents. "Simply denominating unspecified financial statements and reports as

'false,' 'misleading,' or 'inaccurate' is not sufficient." *Rich v. Touche Ross & Co.,* supra, 68 F.R.D. at 246. The plaintiffs must list the Thomson McKinnon documents, if any, that contained misstatements or omissions.

It matters not that this action is brought on behalf of a putative class allegedly victimized by numerous misrepresentations and omissions. The named plaintiffs cannot rest the viability of their fraud pleadings on vague class allegations. Each must plead the specifics of his own fraud or claims. *See supra* p. 343.

█ The defendant also contends that the pleadings do not properly allege scienter or reliance, two essential elements of any fraud claim. Although the second sentence of Fed.R.Civ.P. 9(b) permits a plaintiff to aver generally "[m]alice, intent, knowledge or other condition of mind," it is now settled that a plaintiff pleading fraud must allege, at a minimum, facts from which an inference of scienter can be drawn. *Rooney Pace, Inc. v. Reid,* 605 F.Supp. 158, 162 (S.D.N.Y.1985) (Weinfeld, J.). The complaint alleges that Thomson McKinnon's research and stock analysts surveyed and monitored the Petro-Lewis partnerships. This allegation could support an inference that before Thomson McKinnon made the misrepresentations and omissions alleged in the complaint, it knew or recklessly failed to learn of Petro-Lewis's financial and operating difficulties.

The defendant's attack on the complaint for failure to plead reliance is also unavailing. Rule 9(b) does not require that reliance be specifically pleaded. *See supra* pp. 346–347. The general allegations in

---

9(b) requirements if accompanied by a statement of facts upon which the belief is founded. *Id.* at 608; *Posner v. Cooper & Lybrand,* 92 F.R.D. 765, 769 n. 4 (S.D.N.Y.1981), *aff'd without opinion,* 697 F.2d 296 (2d Cir.1982); *Gross v. Diversified Mortgage Investors,* supra, 431 F.Supp. at 1087.

Paragraph 66 of the complaint states that some of the factual allegations therein are based on information and belief and identifies the sources of that information. The plaintiffs do not, however, specify which allegations are so based. Any new amended complaint should specify the allegations made on information and

belief. Identification of the sources of the plaintiffs' information and belief will otherwise suffice.

7. That the defendant has answered a similar complaint in another action against a brokerage firm that sold Petro-Lewis's securities is of no moment. The Court refuses to speculate as to the defendant's motive for answering that complaint. Moreover, the answer in that action asserts failure to plead fraud with particularity as an affirmative defense.

paragraphs 62 and 70 of reliance on the alleged misrepresentations, omissions, and the integrity of the market are sufficient. Both reliance and scienter have been adequately pleaded.

### b) The RICO Claim

■ The plaintiffs have also failed to plead the predicate acts of mail, wire, and securities fraud that underlie their RICO claims, *see* 18 U.S.C. § 1962(c) (1982), with sufficient particularity. Both sides agree that Rule 9(b) applies when fraud is a predicate act upon which a civil RICO claim is grounded. *See Terra Resources I v. Burgin, supra*, [Current Transfer Binder] at 93,434; *Brokers Mutual Mortgage Corp. v. Bankers Trust Co.*, No. 85–9963, slip op. (S.D.N.Y. June 4, 1986) (Goettel, J.) [Available on WESTLAW, DCTU database]. Requiring that a fraud be pleaded with specificity is particularly important in this context because of the seriousness of a charge of racketeering, even one of civil racketeering. See *Terra Resources I, supra*, [Current Transfer Binder] at 93,434.

We have already concluded that any claims of securities fraud are not pleaded adequately. Since the alleged securities fraud underlies the alleged mail and wire frauds, they too cannot withstand scrutiny under Rule 9(b).

We need not now decide whether the plaintiffs must plead the details of specific mailings or phone calls. Should the plaintiffs plead two separate, but related acts of securities fraud with particularity, they will have established the requisite "pattern of racketeering activity," *see Brokers Mutual Mortgage Corp. v. Bankers Trust Co., supra*, slip op. at 3, and additional allegations of mail or wire fraud will be superfluous for pleading purposes.

### c) The Aiding and Abetting and Conspiracy Claims

The complaint also alleges—albeit in conclusory fashion—that Thomson McKinnon aided and abetted and conspired with Petro-Lewis to defraud the plaintiffs. The defendant attacks both claims.

### 1) Aiding and Abetting

■ In order to state a claim for aiding and abetting a securities law violation, a plaintiff must plead and prove (1) a securities law violation by a primary wrongdoer, (2) knowledge of the violation by the person sought to be charged, and (3) substantial assistance in the primary wrongdoing by the person sought to be charged. *Armstrong v. McAlpin, supra*, 699 F.2d at 91. Although not expressly pleaded as such, each element of the aiding and abetting claim can be extracted from the complaint. That the complaint pleads Petro-Lewis's fraud with particularity is beyond dispute. Facts from which the defendant's knowledge of that alleged fraud can be inferred are also alleged. *See supra* p. 347. Finally, the substantial assistance is alleged. Not only did Thomson McKinnon allegedly sell hundreds, if not thousands, of Petro-Lewis partnerships, but it allegedly dissuaded and discouraged its investors from liquidating their Petro-Lewis partnerships. Of course, the complaint does not identify precisely which Thomson McKinnon employees or documents aided and abetted Petro-Lewis's scheme, but the repleading of the primary fraud claim will correct that defect.

### 2) Conspiracy

■ In order to establish liability for a conspiracy to commit fraud, a plaintiff must plead and prove (1) an agreement between the conspirator and the wrongdoer; and (2) a wrongful act committed in furtherance of the conspiracy. *See Hill v. Equitable Bank, National Association*, 599 F.Supp. 1062, 1083 (D.Del.1984); *Troyer v. Karcagi*, 476 F.Supp. 1142, 1153 (S.D.N.Y.1979).

"It is not enough merely to state that a conspiracy has taken place. Where possible, there should be some details of time and place and the alleged effect of the conspiracy. This is not to say that the pleader must plead his evidence; further details may be secured by means of discovery, and related devices. Moreover, great leeway should be allowed the

pleader, since by the nature of the conspiracy, the details may not be readily known at the time of the pleading." *Kravetz v. Brukenfeld,* 591 F.Supp. 1383, 1387–88 (S.D.N.Y.1984) (quoting 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.17[5], at 8–180 through 8–183 (1984) (footnotes omitted)).

The complaint does not describe the alleged agreement. Instead, it provides only a bold-faced allegation of a conspiracy to violate the securities laws. This is plainly insufficient.

### d) Disposition

Several factors urge us to dismiss the primary fraud, aiding and abetting, and conspiracy claims without leave to replead. First, information about all aspects of the Petro-Lewis situation has long been available in newspapers, magazines, and the public files of the predecessor litigations. Moreover, the plaintiffs have already repleaded once. In fact, when they drafted the amended complaint, the plaintiffs knew of the defendant's specific objections to their initial pleadings. The plaintiffs, nevertheless, ignored the requirements of Rule 9(b).

However, because the pleadings may contain the seeds of a fraud claim and because, like the Second Circuit in *Ross v. A.H. Robins, supra,* 607 F.2d 545, "we ...

hesit[ate] to preclude the prosecution of a possibly meritorious claim because of defects in the pleadings," we afford the plaintiffs "an additional, albeit final, opportunity" to conform their fraud, aiding and abetting, conspiracy, and RICO pleadings to Rule 9(b). *Id.* at 547.

### 2. Motion to Dismiss Bresson's Section 10 Claim as Time-Barred

The defendant also asserts that Bresson's claim under section 10 and Rule 10b–5 promulgated thereunder[8] is barred by the applicable statute of limitations.[9] Because the Securities Exchange Act of 1934 does not specify a limitations period for actions brought under section 10, the Court, in gauging the timeliness of Bresson's section 10 claim, must refer to the statute of limitations of the forum state, New York. *Arneil v. Ramsey,* 550 F.2d 774, 779 (2d Cir.1977). This reference must include application of New York's "borrowing statute." *Id.* "Under that statute, a lawsuit instituted in New York by a non-resident based upon a cause of action *accruing* in a state other than New York is time-barred if the statute of limitations of either the foreign state or of New York had expired prior to the institution of the lawsuit." *Klock v. Lehman Brothers Kuhn Loeb, Inc.,* 584 F.Supp. 210, 214 (S.D.N.Y.1984) (emphasis added).[10] The

---

**8.** Section 10 provides, in pertinent part,

It shall be unlawful for any person, directly or indirectly, ...

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j (1982). Rule 10b–5, promulgated pursuant to section 10, provides, in pertinent part,

It shall be unlawful for any person, directly or indirectly, ...

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements

made, in light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon

any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1985).

**9.** The defendant has not moved to dismiss plaintiff Brown's section 10 claim on this ground.

**10.** The borrowing statute states,

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y.Civ.Prac. Law § 202 (McKinney 1972).

Second Circuit, the courts in this district, and the New York state courts have consistently held that the action "accrues" where the loss was sustained, usually, but not invariably, the state of the plaintiff's residence. *Industrial Consultants, Inc. v. H.S. Equities, Inc.,* 646 F.2d 746, 747 (2d Cir.), *cert. denied,* 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); *Arneil v. Ramsey, supra,* 550 F.2d at 779; *Appel v. Kidder, Peabody & Co.,* 628 F.Supp. 153, 156 (S.D.N.Y.1986); *Klock v. Lehman Brothers, supra,* 584 F.Supp. at 214; *Knieriemen v. Bache Halsey Stuart Shields, Inc.,* 74 A.D.2d 290, 427 N.Y.S.2d 10, 14 (1st Dept.1980), *appeals dismissed,* 50 N.Y.2d 1021, 410 N.E.2d 745, 431 N.Y.S.2d 812 (1980); 51 N.Y.2d 970, 416 N.E.2d 1055, 435 N.Y.S.2d 720 (1980); *Prefabco Inc. v. Olin Corp.,* 71 A.D.2d 587, 418 N.Y.S.2d 432, 433 (1st Dept. 1979). Since Bresson is a Pennsylvania citizen, and his monetary loss, if any, was sustained there, his section 10 claim must be deemed to have "accrued" in Pennsylvania, and New York's borrowing statute applies.

Bresson presses several novel, if unpersuasive, arguments against applying the borrowing statute. We need not consider these arguments because we find that application of the borrowing statute does not necessitate dismissal of Bresson's section 10 claim.

Under the borrowing statute, the Court must apply the shorter of the applicable New York or Pennsylvania statute of limitations. In private actions alleging fraud under the federal securities laws, the six-year limitations period in section 213(8) of New York's Civil Practice Law is customarily applied. *Armstrong v. McAlpin, supra,* 699 F.2d at 87. This six-year period is the same as that applicable under Pennsylvania law to a common law fraud claim accruing between 1978 and 1983. *See A.J. Cunningham Corp. v. Congress Financial Corp.,* 792 F.2d 330 (3d Cir.1986). It is that limitations period which Bresson contends the Pennsylvania courts would apply to his section 10 claim. The statute of limitations under Pennsylvania's blue-sky law, The Pennsylvania Securities Act of 1972, Pa.Stat.Ann.tit. 70 §§ 1–101—1–704 (Purdon supp.1986) ("Pennsylvania Securities Act"), for which the defendant argues, bars any action brought more than "three years after the act or transaction constituting the violation *or* [more than] one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting the violation." Pa.Stat.Ann.tit. 70, § 1–504 (Purdon supp.1986) (emphasis added).

In picking the cause of action whose limitations period applies under Pennsylvania law, the Court must choose the "cause of action which is most similar to the federal cause of action under [section 10] and which best effectuates the rule's purpose." *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 407 (2d Cir.1975). In making that determination, the courts generally look to the decisions of the federal courts located in the state of reference, *see Arneil v. Ramsey, supra,* 550 F.2d at 780, *Anisfeld v. Cantor Fitzgerald & Co.,* 631 F.Supp. 1461, 1465 (S.D.N.Y.1986); *Appel v. Kidder, Peabody & Co., supra,* 628 F.Supp. at 156–57, in this case, the Third Circuit and the federal district courts located in Pennsylvania.

The first district courts to consider this question analogized section 10 to the Pennsylvania Securities Act and applied the limitations period therein. *See generally* Fiebach & Doret, *A Quarter Century Later— The Period of Limitations for Rule 10b–5 Damage Actions in Federal Courts Sitting in Pennsylvania,* 25 Vill.L.Rev. 851, 862 & n. 73 (1980). In *Biggans v. Bache Halsey Stuart Shields, Inc.,* 638 F.2d 605 (3d Cir.1980), the Third Circuit set a new course, holding that the limitations period for common law fraud applies in Pennsylvania to claims under section 10. The Third Circuit reaffirmed its stance in *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 191–92 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). Both courts examined the Pennsylvania Securities Act. They rejected the

limitations period therein because they believed that the Act itself did not provide the plaintiff with a cause of action.

According to these courts, section 1–501 is the sole source of civil liability under the Pennsylvania Securities Act. That section gives "the seller or buyer the right to sue the person purchasing or selling the security." *Biggans, supra*, 638 F.2d at 610, *i.e.*, the parties must be in privity, *Sharp, supra*, 649 F.2d at. 191–92. In *Biggans*, the plaintiff brought a churning claim against his broker. The court determined that the plaintiff could not state a claim under the Pennsylvania Securities Act because the broker merely acted as a conduit for the plaintiff's purchases. The two were not in privity. Under a like interpretation, Thomson McKinnon, a broker-dealer, would not be subject to suit by Bresson. This is not, however, a foregone conclusion. Indeed, Judge Cahn of the United States District Court for the Eastern District of Pennsylvania recently declined to follow *Biggans* and *Sharp*. In *Bull v. American Bank and Trust Co.*, 641 F.Supp. 62, [1986 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,545, at 93,261 (E.D.Pa.1986), he applied the blue-sky limitations period to a limited partner's section 10 claim against the partnership's accountant and lawyer. Judge Cahn asserted that section 1–503 of the Pennsylvania Securities Act, ignored in the Third Circuit decisions, provides buyers and sellers with a civil cause of action against broker-dealers with whom they are not in privity. That section provides, in pertinent part,

> Every affiliate of a person liable under section 501 or 502 ... and every broker-dealer ... who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the person liable hereunder proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

Pa.Stat.Ann.tit. 70, § 1–503(a) (Purdon Supp.1986). On its face, this provision appears to impose civil liability on broker-dealers such as Thomson McKinnon. In fact, a Pennsylvania lower court has stated that an attorney can be held liable to an investor under the Pennsylvania Securities Act. *Brennan v. Reed, Smith, Shaw & McClay*, 304 Pa.Super. 399, 450 A.2d 740, 747 (1982).

Although Judge Cahn's holding is eminently reasonable—the Pennsylvania Securities Act does appear to provide Bresson with a cause of action against Thomson McKinnon—we are constrained by the Third Circuit's unambiguous holdings in *Biggans* and *Sharp*. Until either Pennsylvania's highest state court or the Third Circuit holds otherwise, we must deem privity a requisite to civil liability under the Pennsylvania Securities Act. That interpretation, in turn, forecloses any claim by the plaintiff under the Pennsylvania Securities Act, and makes common law fraud, a claim indisputably available to Bresson against Thomson McKinnon under Pennsylvania law, *see Biggans, supra*, 638 F.2d at 610, the most analogous state cause of action. In the words of the *Biggans* court,

> [w]here [, as here,] the state Blue Sky law does not provide the plaintiff with a cause of action for the relief requested, but common law does, and where the state legislature framed its statute to supplement, rather than supplant, available common law remedies, it is the [six-year] common law limitations period [under both New York and Pennsylvania law] which must be applied....

*Biggans, supra*, 638 F.2d at 610. *See Berry Petroleum Co. v. Adams & Peck, supra*, 518 F.2d at 409 ("[T]he broad remedial policies of the federal securities laws are best served by a longer, not a shorter, statute of limitations.") (quoting *United California Bank v. Salik*, 481 F.2d 1012, 1015 (9th Cir.), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973)).

Although state law determines the applicable limitations period, federal law determines when that period begins to run. *Armstrong v. McAlpin, supra*, 699 F.2d at

86. As with section 13, the six-year period begins to run when the plaintiff is placed on inquiry notice of the alleged fraud. *Id.* at 88; *see supra* pp. 344–345. Since the limited partnership interest that is the subject of Bresson's section 10 claim was purchased in 1981, less than six years before the commencement of this action, the motion to dismiss the section 10 claim as time-barred is denied.[11]

#### C. The Negligent Misrepresentation Claim

██ The defendant moves to dismiss the fifth count of the complaint labelled "Negligence and Negligent Misrepresentation," because that count "sounds entirely in fraud." Defendant's Reply Memorandum at 34. The defendant's objection is difficult to comprehend. A complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed.R.Civ.P. 8(a). In the fifth count, the plaintiffs describe both the alleged duty owed to them by the defendant and three negligent acts or omissions. This pleading is sufficient to state a negligence claim against Thomson McKinnon. The motion to dismiss the fifth count is denied.

#### D. Motion to Dismiss for Lack of Subject Matter Jurisdiction

██ The defendant contends that neither plaintiff has established an amount in controversy exceeding $10,000. Generally, in determining the amount in controversy, the sum claimed by the plaintiff controls. *See Horton v. Liberty Mutual Insurance Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961); *Stark Carpet Corp. v. M-Geough Robinson Inc.*, 481 F.Supp. 499, 501 n. 1 (S.D.N.Y.1980). If the plaintiff in good faith seeks a recovery in excess of $10,000, the amount in controversy re-

quirement is met. Each plaintiff must separately establish the requisite jurisdictional amount. *Zahn v. International Paper Co.*, 414 U.S. 291, 293–96, 94 S.Ct. 505, 507–08, 38 L.Ed.2d 511 (1973).

Both plaintiffs purchased a minimum of $50,000 in Petro-Lewis partnership interests. Even after proceeds from the class action settlement and the remaining value of the plaintiffs' partnerships are subtracted, the Court has no doubt that the plaintiffs can claim, as they have pleaded, to have been damaged in an amount greater than $10,000. The motion to dismiss for lack of subject matter jurisdiction is denied.[12]

## II. Conclusion

The motion to dismiss the plaintiffs' section 11 and 12(2) claims as time-barred is granted. The motions to dismiss the section 10, common law fraud, RICO, aiding and abetting, and conspiracy claims for failure to plead fraud with particularity are granted. The plaintiffs shall have 20 days to replead those claims in accordance with the instructions herein. The motion to dismiss plaintiff Bresson's section 10 claim as time-barred is denied. The motion to dismiss the fifth count alleging negligence and negligent representation is denied. The motion to dismiss the state law claims for lack of subject matter jurisdiction is denied.

SO ORDERED.

---

11. At oral argument and in its additional submissions to the Court, the defendant argued that, should the Court find that the Pennsylvania blue-sky statute of limitations bars Bresson's section 10 claim, then that statute should also bar his RICO claim. That argument has lost its luster, and the defendant has not otherwise

moved to dismiss the RICO claims as time-barred.

12. Any objection to the Court's pendent jurisdiction need not be addressed until the plaintiffs have had an opportunity to replead their remaining federal claims.