Stanley FERBER, et al.

v.

The TRAVELERS CORPORATION,
Edward H. Budd, Richard J. Shima,
Thomas O. Thorsen.

Civ. No. H–90–842 (AHN).

United States District Court,
D. Connecticut.

Dec. 2, 1991.

Ruling on Plaintiffs' Motion For
Reconsideration and Request for Leave
to Amend Jan. 9, 1992.

J. Daniel Sagarin, Hurwitz & Sagarin, P.C., Milford, Conn., Robert Sugarman, Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, for plaintiffs.

Thomas Groark, Jr., Day, Berry & Howard, Hartford, Conn., Herbert Wachtell, Wachtell, Lipton, Rose & Katz, New York City, for defendants.

RULING ON MOTION TO DISMISS

NEVAS, District Judge.

This is a five-count class action [1] in which

---

1. The class has not been certified.

twenty-two shareholders [2] ("the plaintiffs") sue the Travelers Corporation ("Travelers"), Edward H. Budd ("Budd"),[3] Thomas O. Thorsen ("Thorsen"),[4] Richard J. Shima ("Shima"),[5] (collectively, "the defendants") for violations of federal securities and common law. The plaintiffs allege that in public statements and reports disseminated to the public between November 15, 1989 and October 5, 1990 ("the Class Period"), the defendants made material misrepresentations concerning Travelers' net income, loan loss reserves, real estate and junk bond portfolios, common stock dividends and future business prospects.

In count one of the consolidated amended complaint ("the complaint") (filing no. 21), the plaintiffs sue the defendants for securities fraud, alleging violations of Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1990). In count two, the plaintiffs sue the individual defendants for violations of Section 20(a) of the 1934 Act. In count three, the plaintiffs sue the defendants for violations of Sections 11, 12 and 15 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §§ 77k, 77*l*, 77*o*. The last two counts of the complaint are pendent state law claims against the defendants. Count four is an action for common law fraud and deceit and count five is an action for negligent misrepresen-

tation. The defendants now move to dismiss the entire complaint pursuant to Rules 9(b), 12(b)(6) and 12(b)(1), Fed. R.Civ.P. For the reasons that follow, the motion to dismiss is granted in its entirety.

## I. Applicable Standards

### A. Rule 12(b)(6)

When considering a motion to dismiss the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *Schauer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Corcoran v. American Plan Corp.*, 886 F.2d 16, 17 (2d Cir.1989). Dismissal is not warranted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Patton v. Dole*, 806 F.2d 24, 30 (2d Cir. 1986). The plaintiff, however, must set forth information sufficient to outline the elements of the claim or to permit inferences to be drawn that these elements exist. In determining whether to grant a Rule 12(b)(6) motion, the court considers primarily the allegations in the complaint, although a wide range of material may be taken into account.[6] 5A C. Wright and A.

---

**2.** The plaintiffs and the number of shares of common stock they own are: Stanley Ferber (not disclosed); Steven Cooperman (50 shares); Milton Fishman (200 shares); David Steinberg (200 shares); David Jaroslawicz (200 shares); Claire Merrit (500 shares); Gary Steiner (150 shares); Kenneth Steiner (150 shares); Charles Miller (200 shares); Anita Kleinman (not disclosed); Howard Schneider (not disclosed); Michael Rothans (300 shares); Horace McCormick (500 shares); Robert Kelm (200 shares); Sheldon Shore (10 shares); Anne Lieberman Trust (100 shares); Robert Kelman (200 shares); Frank Tishchler (200 shares); Charles Brown (450 shares); Robert Krieger (300 shares); John Heller (75 shares); Kar Gong (200 shares).

**3.** Edward H. Budd is Chairman of the Board, Chief Executive Officer, President and a director of Travelers. He is also Chairman of the Executive Committee and a member of the Investment Committee.

**4.** Thorsen is Vice Chairman, Chief Financial Officer and a director of Travelers. He is also a

member of the Executive Committee and the Investment Committee.

**5.** Shima is Vice Chairman, Chief Investment Officer and a director of Travelers. He is also Chairman of the Investment Committee and a member of the Executive Committee.

**6.** The court recognizes that, in considering a motion to dismiss under Rule 12(b)(6), it must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated by reference. *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir.1985). The plaintiffs suggest that the court may not consider the complete texts of public documents filed by Travelers, but must instead limit its inquiry to the quotations of limited passages from those documents that are set forth in the complaint. The court disagrees. The court may take judicial notice, Rule 201(b)(2), Fed.R.Evid., of the contents of relevant public disclosure documents required by law to be filed, and actually filed, with the Securities and Exchange Commis-

Miller, *Federal Practice and Procedure: Civil* § 1364, at 475–81 (1990 & 1991 Supp.) ("Wright & Miller"). Ultimately, the question for the court to decide is "whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiff's claims." *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.1978), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979).

## B. Rule 9(b)

■ A plaintiff alleging fraud must do so by specifically setting forth facts that constitute this unlawful conduct. Indeed, Rule 9(b) requires that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." There is a tension between Rule 9(b) and Rule 8(a)(2), Fed.R.Civ.P., which requires only that pleadings consist of "a short and plain statement of the claim showing that the pleader is entitled to relief." Rules 9(b) and 8(a)(2) must be harmonized in light of the policy considerations behind Rule 9(b). Three purposes underlie the particularity requirement of Rule 9(b):

> First, it assures the defendant of fair notice of what the plaintiff's claim is and the grounds upon which it rests.... Secondly, the specificity requirement grows out of the desire to protect defendants from the harm that comes to their reputations or to their goodwill when they are charged with serious wrongdoing.... In the context of securities litigation Rule 9(b) serves an additional important purpose. It operates to diminish

the possibility that a plaintiff with a largely groundless claim [will be able] to simply take up the time of a number of other people [by extensive discovery], with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence.

*Ross v. A.H. Robins, Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980) (citations and quotations omitted). Accordingly, Rule 9(b) "is a special pleading requirement and contrary to the general approach of simplified pleading adopted by the federal rules." *Ross*, 607 F.2d at 557 (quoting 5 Wright & Miller § 1297 at 615).[7] Thus, Rule 9(b) requires pleading that gives fair notice in light of the special nature of fraud cases.

## II. *Background*

Travelers is one of the largest multi-line insurance companies in the United States. It underwrites life, group life, prepaid and group accident and health, individual and group annuities, workers compensation, auto, liability, casualty and fire insurance. (Compl. ¶ 24). Travelers' insurance and related investment operations accounted for 89% of its consolidated assets and 88% of its net income for fiscal year 1989. (Compl. ¶ 24).

Prior to the mid–1980s, Travelers invested proceeds from its insurance business in relatively stable, low risk, guaranteed investments in order to earn a safe and consistent investment return. (Compl. ¶ 25).

---

sion. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir.1991). Thus, in considering the defendants' motion to dismiss, the court may refer to Travelers' public filings. The proper consideration of matters outside of the complaint does not extend to the defendants' press releases or announcements at shareholder meetings. *Id.* However, the court may also consider the full text of documents that are "integral to [the] plaintiff's claims." *Field v. Trump*, 850 F.2d 938, 949 (2d Cir.1988), *cert. denied*, 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989). *See also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46–48 (2d Cir.1991) (Cardamone, J.).

7. The Second Circuit has emphasized the need for a high degree of specificity in pleading securities fraud claims. *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972) ("[i]t is now quite clear in this Circuit that allegations with respect to 10b–5 violations will not pass scrutiny if they do not allege with some specificity the statements allegedly constituting the fraud. Mere conclusory allegations to the effect that defendant's conduct was fraudulent or in violation of 10b–5 are insufficient.") (quoting *Matheson v. White Weld & Co.*, 53 F.R.D. 450, 452 (S.D.N.Y.1971)). *See also Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982); *Denny v. Barber*, 576 F.2d 465, 468–69 (2d Cir.1978).

During the mid–1980s, in order to obtain higher yields on investments made with proceeds from its insurance business, Travelers made risky investments in mortgage loans, highly leveraged real estate transactions and junk bonds. (Compl. ¶ 26).

In August 1988, Travelers added $415,000,000 to its loss reserves for real estate operations. Primarily as a result of the addition to loss reserves, Travelers' net income for 1988 fell to $55,000,000 from $321,000,000 for 1987. (Compl. ¶ 32–32). During 1989, Travelers made no material changes in its loss reserves for real estate operations or in connection with its junk bond holdings, and reported a net income of $445,000,000 for the year. (Compl. ¶ 35).

The plaintiffs allege that throughout the Class Period, Travelers publicly stated that it was actively monitoring its real estate and junk bond portfolios and had established its real estate loan loss reserves in a timely and proper manner. (Compl. ¶ 38). Furthermore, the plaintiffs allege that Travelers portrayed its financial condition in an unrealistically positive light. (Compl. ¶ 39). Indeed, the plaintiffs allege that Travelers made statements, in the Third Quarter 1989 Form 10–Q, about losses, the need for loan loss reserves and reported earnings that were knowingly or recklessly materially false and misleading. These statements materially understated losses, failed to disclose that Travelers was under-reserved for potential real estate losses from non-performing loans, and thus overstated its earnings. (Compl. ¶¶ 40–1).

In addition, the plaintiffs allege that the defendants made false and misleading statements in a variety of other contexts. In the 1989 Annual Report to Shareholders ("1989 Annual Report"), the defendants allegedly made false and misleading statements concerning real estate-related problems and the status of Travelers' junk bond portfolio. (Compl. ¶¶ 42–5). At the April 3, 1990 annual shareholders meeting, Budd allegedly made false and misleading statements concerning reserves for the real estate investments and Travelers' book value. (Compl. ¶¶ 46–7). The plaintiffs allege that Travelers made false statements concern-

ing reserves for real estate loan losses in the Forms 10–Q for the quarters ending March 31, June 30 and August 10, 1990. (Compl. ¶¶ 50–4).

Travelers' allegedly false representations concerning the extent of the non-performing loans in the real estate portfolio and overstatements concerning reported assets and earnings culminated on October 5, 1990, when Travelers publicly announced that it expected to report a $500 million third quarter loss in earnings. This loss was largely attributable to a $650 million addition to reserves for possible losses on real estate-related investments. Accordingly, Travelers cut its quarterly dividend substantially. The same day, the price of Travelers common stock dropped from $20.75 to $16.375—almost 24% of its value. On October 8, 1990, the next trading day, the price of Travelers' common stock fell an additional $2.00 per share.

The core of the plaintiffs' allegations is set forth in paragraphs eleven through seventeen of the complaint. The plaintiffs allege that the defendants engaged in a "plan, scheme and course of conduct" which:

(i) deceive[d] the investing public, including the plaintiffs ... regarding Travelers' financial condition and future business prospects; (ii) artificially inflate[d] and maintain[ed] the market price of Travelers common stock; and (iii) cause[d] [the] plaintiffs ... to purchase Travelers common stock at inflated prices.

(Compl. ¶ 11). The plaintiffs further allege that, as members of Travelers' Investment Committee, the individual defendants had supervisory authority over Travelers' lending and investment activities and approved each loan and investment. (Compl. ¶ 12). In these capacities, the individual defendants allegedly should have known about the risks associated with Travelers investment portfolio and the failure to set aside sufficient loss reserves. To this extent, the individual defendants allegedly deceived the investment public by disseminating reports and statements that were materially false and misleading. (Compl. ¶ 13).

## III. *Discussion*

### A. Count One: Section 10(b) of the 1934 Act and Rule 10b–5

■ The defendants advance several arguments in support of their motion to dismiss. First, they characterize this action as typical of "the recent spate of virtually identical complaints that have been foisted upon the federal courts virtually every time a bank or insurance company has announced an increase in loan-loss reserves."[8] (Mem.Supp.Mot.Dismiss at 3). The defendants submit that most courts considering similar lawsuits have granted motions to dismiss on the ground that the complaints failed to plead fraud with specificity. Second, the defendants argue that the complaint is typical of "strike suits"[9] involving loan loss reserves because it selectively recites the defendants' statements at great length and then simply alleges, without factual basis, the conclusion that the statements were intentionally false and misleading. More specifically, the plaintiffs present rosy descriptions of Travelers' financial health at one time and not-so-rosy descriptions after financial reversal and then simply assert that the difference must be due to fraud. The defendants conclude that this "fraud by hindsight" is not actionable under Section 10(b) and Rule 10b–5. The court agrees.

■ To state a claim under Section 10(b) and Rule 10b–5 the plaintiffs must allege that, "in connection with the purchase or sale of securities, the defendant[s], acting with scienter, made a false material representation or omitted to disclose material information and that the plaintiff[s'] reliance on the defendant[s'] actions caused [them] injury." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985); *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 381 (2d Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). Directly at issue in this action are the sufficiency of the pleadings concerning scienter and nature of the information the defendants allegedly misstated or failed to state.[10]

**8.** As noted at the August 8, 1991 hearing, the court finds it peculiar that four of the lawsuits consolidated in this action were filed around 10:00 a.m. on the first business day following Travelers' announcement of the loss reserve increase. Most of the complaints are virtually identical (including typographical errors). At the hearing the court inquired about the swiftness of the plaintiffs' response to the announcement by Travelers. Counsel for the plaintiffs represented that "people in [his] firm worked throughout th[e] weekend" to obtain the documentation necessary to file the complaints. (Tr. Hr'g Mot.Dismiss at 25–26). The court also asked:

> [H]ow did you get to be so smart and to acquire all this knowledge about fraud from Friday to Tuesday? ... [O]n Friday afternoon did your client suddenly appear at your doorstep and say "My God, I just read in the *Wall Street Journal* about Travelers. They defrauded me," and you agreed with them and you interviewed them and you determined that there was fraud and therefore you had a good lawsuit, so you filed it Tuesday morning, is that what happened?

*Id.* Counsel for the plaintiffs was not responsive to this line of inquiry.

**9.** Strike suits are "complaints filed as pretexts for the discovery of unknown wrongs", *In re First Chicago Corp. Sec. Litig.,* 769 F.Supp. 1444, 1452 (N.D.Ill.1991), which, should they not be dismissed, "issue a license for a 'fishing expedition' in uncharted waters", *Wayne Inv., Inc. v. Gulf Oil Corp.,* 739 F.2d 11, 14 (1st Cir.1984). As the court stated in *Gollomp v. MNC Fin., Inc.,* 756 F.Supp. 228, 232 (D.Md.1991), "a fraud suit cannot itself be the vehicle for initially uncovering the fraud." *See also Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 739, 95 S.Ct. 1917, 1927, 44 L.Ed.2d 539 (1975) (securities litigation "presents a danger of vexatiousness different in degree and kind from that which accompanies litigation in general" and provides "the potential for nuisance or 'strike' suits" whose "very pendency ... may frustrate or delay normal business activity of the defendant which is totally unrelated to the lawsuit").

**10.** The court notes that the allegedly material misstatements or omissions must be factual in nature. As the Second Circuit stated in *Data Probe Acquisition Corp. v. Datatab, Inc.,* 722 F.2d 1, 6 (2d Cir.1983), *cert. denied,* 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984):

> The disclosure required by the Act is not a rite of confession or exercise in common law pleading. What is required is the disclosure of material objective factual matters.

In addition, the Second Circuit has defined scienter in the securities context as the "intent to deceive, manipulate or defraud." *Arthur Lipper Corp. v. S.E.C.,* 547 F.2d 171, 181 (2d Cir. 1976), *cert. denied,* 434 U.S. 1009, 98 S.Ct. 719, 54 L.Ed.2d 752 (1978).

### 1. *Scienter*

In *Ouaknine v. MacFarlane*, 897 F.2d 75, 79–80 (2d Cir.1990), the Second Circuit stated:

> To pass muster under [R]ule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation. Although scienter need not be alleged with great specificity, there must be some factual basis for conclusory allegations of intent. Allegations of scienter are sufficient if supported by facts giving rise to a "strong inference" of fraudulent intent.

(citations omitted). *See also Cosmas v. Hassett*, 886 F.2d 8, 12–13 (2d Cir.1989) (the complaint must "allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent"). Of course, the court recognizes that recklessness is sufficient to establish the scienter requirement of Section 10 and Rule 10b–5. *See Singer v. Livoti*, 741 F.Supp. 1040 (S.D.N.Y.1990); *Johnson & Staley, Inc. v. Bushan & Levy, P.C.*, 527 F.Supp. 1159 (S.D.N.Y.1981). On the other hand, if the complaint does not allege intentional or reckless conduct, but merely alleges negligent conduct, then a fraud claim under federal securities law is not actionable. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977).

The key issue before the court is whether the plaintiffs' allegations of scienter are supported by facts that give rise to a strong inference of fraudulent intent. At the hearing on this motion, counsel for the plaintiffs identified three factual allegations that give rise to a strong inference of the fraudulent intent of the defendants. First, in paragraph 55 of the complaint, the plaintiffs allege that "[a] company executive also informed analysts in October 1990 that [Travelers] had been averaging losses of 33 percent on $1 billion worth of fore-closed property sales since mid–1988." [11] Second, the plaintiffs contend that, as officers of Travelers, the individual defendants were compensated based on yearly corporate financial performance. Accordingly, the individual defendants committed fraud to preserve their salaries. [12] Third, the plaintiffs contend that the individual defendants were members of Travelers' Investment Committee, and in this capacity, they had supervisory authority over Travelers' lending and investment activities. Thus, the individual defendants possessed information sufficient to give rise to an inference of fraud. Counsel for the plaintiffs summarized these three factual allegations at the hearing as:

> You have the admission of something bad happening during the class period, you have the people in a position to know that something bad was happening, and you have the motive for ignoring what was happening bad.

(Tr.Hr'g Mot.Dismiss at 53). In response, the defendants contend that these factual allegations, taken alone or in conjunction, are not sufficient to meet the burden under Rule 9(b). The court agrees with the defendants.

First, incentive compensation can hardly be the basis on which an allegation of fraud is predicated. On a practical level, were the opposite true, the executives of virtually every corporation in the United States could be subject to fraud allegations. It does not logically follow that because executives have components of their compensation keyed to performance, one can infer fraudulent intent. Furthermore, one of the purposes of Rule 9(b)—to protect a defendant's reputation from harm—is violated by this factual basis for the fraud allegation. As the court noted at the August 8th hearing, it is a very serious allegation to accuse executive officers and corporate directors of compromising their positions of trust and responsibility for, in

---

11. At the hearing, counsel for the plaintiffs indicated that the statement appeared in a November 1990 Sunday Magazine section of the *New York Times* and was attributed to Alan Schuster, a Travelers *executive who is responsible for* managing Travelers' problem real estate loans.

12. In 1989, Budd earned $950,000, while in 1990 he earned $700,000. Shima earned $664,000 in 1989 and $500,000 in 1990. And Thorsen earned $664,000 in 1989 and $600,000 in 1990.

one instance, $64,000. *See Cole v. Federal Home Loan Mortgage Corp.,* Fed.Sec. L.Rep. (CCH) ¶ 96,234, 1991 WL 180295, 1991 U.S.Dist. LEXIS 11857 (D.D.C.1991) (Flannery, J.) ("[t]he aim of protecting defendants from harm to their reputations will also be met if this suit is dismissed.... [t]he need for this protection is especially acute where [one of the] defendants ... [is the] CEO whose position and reputation [is] particularly vulnerable to accusations of fraud").

Second, the individual defendants' status as corporate insiders and members of the Investment Committee without specific allegations linking their positions to their knowledge is not sufficient to give rise to a strong inference of scienter. *Cf. Ballan v. Wilfred Am. Educ. Corp.,* 720 F.Supp. 241, 253 (E.D.N.Y.1989); *Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962, 978 (E.D.N.Y. 1988), *vacated in part on other grounds,* 714 F.Supp. 1285 (E.D.N.Y.1989). Here, the allegations linking status to knowledge are insufficient because they fail to specify facts that give rise to the strong inference that the defendants had knowledge of the facts or recklessly disregarded their existence.

Third, the court is reluctant to hold that the plaintiffs have met their burden under Rule 9(b) when the fact upon which the allegations of fraud are predicated is a statement that appeared in an article in the Sunday *New York Times Magazine.* The article states, "At the October [1990] analysts meeting Alan Schuster reported that the company had been averaging losses of 33 percent on one billion dollars worth of foreclosed property sales since 1988." (Tr. Hr'g Mot.Dismiss at 49). The strictures of Rule 9(b) are not satisfied by indirect quotes taken from a newspaper reporter's notebook. *See Haft v. Eastland Fin. Corp.,* 772 F.Supp. 1315 (D.R.I.1991) (quotation from article appearing in *Providence Journal* "fails to provide the underlying factual support required by Rule 9(b)" because "[i]t is not a direct quote from the defendants, it is merely an analysts' opinion"); *Schwartz v. Novo Industri, A/S,* 658 F.Supp. 795, 799 (S.D.N.Y.1987); *Milberg v. Western Pac. R.R. Co.,* 51 F.R.D.

280, 282 (S.D.N.Y.1970). *See generally, Hershfang v. Citicorp,* Fed.Sec.L.Rep. (CCH) ¶ 96,065, 767 F.Supp. 1251 (S.D.N.Y. 1991) (Mukasey, J.) (excellent discussion of misstatements in newspaper articles as basis for securities actions).

Finally, it would take a leap of logic to sustain the claim that a strong inference of fraud materializes from the combination of the three factual allegations examined above.

### 2. *Loan Loss Reserves*

The plaintiffs contend that they have identified specific statements made by the defendants which either misrepresented or failed to disclose material facts regarding Travelers' quarterly and annual earnings, its aggregate levels of nonperforming real estate and mortgage loans at quarterly and annual intervals (Compl. ¶¶ 46, 50, 52–53, 64–68), the adequacy of its provisions for loss reserves on a quarterly and annual basis, (Compl. ¶¶ 40, 42–43, 50, 52, 64–68) and the book value of its common stock (Compl. ¶¶ 44, 47).

The defendants respond by arguing that the complaint is devoid of any specific allegations of materially misstated facts, or of material facts that they failed to disclose. Specifically, the defendants contend that the complaint does not contain

a single specific allegation as to how or how much Travelers was "underreserved for potential real estate related losses [Compl.] ¶ 38, what "significant continuing risks" existed in Travelers' real estate loan portfolio [Compl.] ¶ 38, how those risks "potential[ly] impact[ed]" Travelers' ability to pay dividends [Compl.] ¶ 38, or what "significant and ever increasing problems" Travelers was having "with its real estate investments" [Compl.] ¶ 39.

(Mem.Supp.Mot.Dismiss at 14). The only factual basis for the plaintiffs' claim of fraud, the defendants conclude, is the loss reserve increase of October 5, 1990.

■ As a preliminary observation, it bears noting that the complaint frequently quotes selectively from public disclosure documents and annual reports. Thus, for

example, while the complaint alleges that Travelers, in its 1989 Annual Report, indicated that there was uncertainty in the real estate markets, Compl. ¶ 42, the plaintiffs do not quote from portions of the Annual Report that indicate Travelers' recognition that its success in selling troubled real estate depended upon unpredictable market conditions, a slowdown in economic growth during 1990 and a general weakness in real estate markets. (App.Mem.Supp.Mot.Dismiss, Ex. L at 29). And, for example, while the complaint alleges that Travelers' March 31, 1990 Form 10–Q stated that it was adequately reserved for real estate losses, the plaintiffs ignore Travelers' warning that "[t]he deteriorating real estate markets throughout the United States are expected to continue to have an adverse impact on Travelers results." (App.Mem.Supp.Mot.Dismiss, Ex. N at 8). Accordingly, the court considers the complete texts of the public documents filed by Travelers, not solely the portions quoted by the plaintiffs. *See Kramer*, 937 F.2d at 774; *Field*, 850 F.2d at 949.

■ In *Steiner v. Shawmut National Corp.*, 766 F.Supp. 1236 (D.Conn.1991), this court granted the defendants' motion to dismiss a Section 10(b) and Rule 10b–5 action in which the plaintiff class alleged that the defendants understated its loan loss reserves, overstated its earnings, misrepresented the quality of its loan portfolio and overestimated its future prospects. *Id.* at 1237. The court analyzed a string of loan loss cases from both the courts of appeals [13] and district courts.[14] As the court observed, the complaints in those cases, like the present action

allege[d] similar factual scenarios: 1) a substantial increase in the loan loss reserves 2) a substantial decrease in the value of the stock after the announcement of the increase 3) the inherent contradiction between the bank's statement

that it was conservatively managed and the deterioration of its loan portfolio. *Id.* at 1245. In all of the cases cited by the court, the defendants' motions to dismiss were granted for failure to allege facts that would support an inference of fraud.

■ Here too, the complaint fails to allege sufficient facts to support the inference of fraud. The plaintiffs do specifically plead the time, place, speaker and content of the alleged misrepresentations. However, this index of statements is insufficient, *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987), because the plaintiffs do not take the necessary next step: They do not plead sufficient facts to support the inference that the defendants

knowingly or recklessly failed to increase its reserves for loan losses in the face of increasingly difficult conditions in the real estate market ... under-reserved by hundreds of millions of dollars and thereby manipulated loan loss reserves in order to perpetuate the aura of an increasingly profitable Travelers.

(Compl. ¶ 54). The plaintiffs cannot plead fraud simply by "quoting pertinent favorable ... statements ... and then alleging the contrary of each statement." *Decker*, 681 F.2d at 115.

Thus, the defendants are alleged to have concealed that Travelers "made very aggressive and very risky commercial real estate loans that were not creditworthy", Compl. ¶ 49, yet "there is no specification of what loans, at what times, and in what amounts were 'risky' ", *Denny*, 576 F.2d at 469, and no allegation that "particular loan[s] should have been treated in a different way", *Driscoll v. Landmark Bank for Sav.*, 758 F.Supp. 48, 53 (D.Mass.1991). Thus, the complaint alleges that the defendants "knowingly or recklessly failed to increase [ ] reserves for loan losses in the face of increasingly difficult conditions in the real estate market", Compl. ¶ 54, and a

---

13. *DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990); *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96 (3d Cir. 1983); *Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978).

14. *Salit v. Centerbank*, 767 F.Supp. 429 (D.Conn. 1990); *Gollomp v. MNC Fin., Inc.*, 756 F.Supp. 228 (D.Md.1991); *Haft v. Eastland Fin. Corp.*, 755 F.Supp. 1123 (D.R.I.1991); *Shields v. Amoskeag Bank Shares, Inc.*, 766 F.Supp. 32 (D.N.H.1991).

"real estate portfolio [with] an increasing number of large non-performing loans", Compl. ¶¶ 51 and 54, yet the complaint fails to "give examples of problem loans that [the defendants] should have caught, or explain how [they] did or should have recognized that the provisions for reserves ... were inadequate." *DiLeo*, 901 F.2d at 626. Thus, the defendants are alleged to have known but failed "to disclose that Travelers was underreserved for potential real estate losses", Compl. ¶ 38, yet there is "not even an indication of the date at which defendants knew the investments had become so unacceptably 'risky' that disclosure was required." *Denny*, 576 F.2d at 470. Finally, the complaint alleges that the defendants' "policies and systems of internal control to assure adequate collateralizing and prompt recognition in accounting for problems were not functioning adequately or were being disregarded, not followed, or circumvented", Compl. ¶ 64(b), yet "[w]hat those practices are and how they were departed from is nowhere set forth." *Christidis*, 717 F.2d at 100.

The court has also considered the profusion of cases submitted by the parties in which courts have addressed similar lawsuits against financial institutions arising in the wake of the recent downturn in the national real estate market. The plaintiffs offer seven district court rulings denying motions to dismiss on facts similar to this action.[15] Nevertheless, the court finds more well-reasoned and persuasive the district court rulings submitted by the defendants.[16]

Finally, a great deal of the hearing on this motion was devoted to the Supreme Court's recent decision in *Virginia Bankshares, Inc. v. Sandberg*, — U.S. —, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991). There, the Court held that "statements of reasons, opinions, or beliefs"—so-called "soft information"—included in proxy solicitation materials may be actionable under Section 14(a) of the 1934 Act, 15 U.S.C. § 78n(a), and Rule 14a–9, 17 C.F.R. 240.14a–9 (1990), if "knowingly false or misleadingly incomplete, even when stated in conclusory terms." *Id.* 111 S.Ct. at 2759. The court recognizes that, although *Virginia Bankshares* concerned a Section 14(a) action, the materiality standard for both Section 10(b) and Section 14(a) actions is the same. *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 nn. 7 & 8, 108 S.Ct. 978, 983 nn. 7 & 8, 99 L.Ed.2d 194 (adopting the Section 14(a) materiality standard set forth in *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)). Nevertheless, *Virginia Bankshares* does not dictate an outcome here. Whether the allegedly fraudulent statements were misleading because of material omissions or involved knowingly false statements of reasons, opinions or beliefs, the complaint fails for the same reason: the plaintiffs have not pleaded facts which give rise to a strong inference of fraud.

---

15. *See In re Meridian Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 96,176, 772 F.Supp. 223 (E.D.Pa.1991) (Cahn, J.); *Balsam v. Eastchester Fin. Corp.*, Fed.Sec.L.Rep. (CCH) ¶ 95,877, 1991 WL 41901, 1991 U.S.Dist. LEXIS 3536 (E.D.N.Y.1991) (Nickerson, J.); *Akerman v. Amoskeag Bank Shares*, Fed.Sec.L.Rep. (CCH) ¶ 95,702, 1990 WL 357914, U.S.Dist. LEXIS 18798 (D.N.H.1990) (Loughlin, J.); *Sonnenberg v. Prospect Park Financial Corp.*, No. 91–435, 1991 WL 329755 (D.N.J. Aug. 20, 1991) (Debevoise, J.); *In re Chase Manhattan Corp. Sec. Litig.*, 90 Civ. 6092, 1991 WL 152618 (S.D.N.Y. Aug. 1, 1991) (McKenna, J.); *In re Midlantic Corp. Shareholder Litig.*, 758 F.Supp. 226 (D.N.J.1990) (Debevoise, J.); *Save On Surplus Pension Plan v. United Saver's Bancorp, Inc.*, 760 F.Supp. 971 (D.N.H.1990) (Devine, C.J.).

16. *See e.g., In re First Chicago Corp. Sec. Litig.*, 769 F.Supp. 1444 (N.D.Ill.1991); *Heller v. NCNB Corp.*, 768 F.Supp. 167 (W.D.N.C.1991); *Shields v. Amoskeag Bank Shares, Inc.*, 766 F.Supp. 32 (D.N.H.1991); *In re Fleet/Norstar Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 96,146, 1991 WL 185171, 1991 U.S.Dist. LEXIS 7874 (D.R.I.1991) (Hagopian, M.J.); *Haft v. Eastland Fin. Corp.*, No. 90–0302P (D.R.I. July 3, 1991) (Pettine, J.); *Fox v. Equimark Corp.*, 782 F.Supp. 295 (W.D.Pa.1991) (Cohill, C.J.); *Shields v. NCNB Corp.*, No. C–C–90–0090–MU, 1991 WL 146854 (W.D.N.C. March 27, 1991) (Mullen, J.); *Schwartz v. NCNB Corp.*, 768 F.Supp. 164 (W.D.N.C.1991) (Mullen, J.); *Dubowski v. Dominion Bankshares Corp.*, 763 F.Supp. 169 (W.D.Va.1991) (Turk, C.J.); *In re One Bancorp Sec. Litig.*, 135 F.R.D. 9 (D.Me.1991) (Carter, C.J.); *Wilkes v. Heritage Bancorp, Inc.*, 767 F.Supp. 1166 (D.Mass.1991) (Freedman, C.J.).

In light of the analysis above, the complaint lacks the specificity necessary to satisfy Rule 9(b) and, accordingly, fails to state an action under Section 10(b) and Rule 10b–5.

**B. Count Two: Section 20(a) of the 1934 Act**

■ Section 20(a) of the 1934 Act provides for the liability of "control persons" who engage in the schemes, transactions, and artifices to defraud under Section 10(b) and Rule 10b–5. 15 U.S.C. § 78t(a). The purpose of Section 20(a) is to "impose liability on those directors who fall within its definition of control and who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons." *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir.1973). In order to state a claim for control person liability, the plaintiffs must allege satisfactorily the existence of an underlying securities law violation. Consequently, claims for secondary liability must be dismissed when primary violation claims are dismissed. *Haft*, 755 F.Supp. at 1133; *Bernstein*, 702 F.Supp. at 979. Since the court has dismissed the plaintiffs' Rule 10b–5 claim, the Section 20(a) claim is also dismissed.

**C. Count Three: Sections 11, 12 and 15 of the 1933 Act** [17]

■ In count three of the complaint, the plaintiffs allege, on behalf of themselves and a "subclass" of persons who purchased Travelers stock during the Class Period under Travelers' Dividend Reinvestment Plan ("DRP"), violations of Sections 11, 12 and 15 of the 1933 Act, 15 U.S.C. §§ 77k, 77l, 77o. This claim is based upon statements made in the DRP registration statement and prospectus. (Compl. ¶¶ 76–82). However, the plaintiffs have failed to provide any factual basis for this cause of action. In fact, even though Sections 11 and 12 require a showing of a false statement in a prospectus, 15 U.S.C. § 77k(a), or

registration statement, 15 U.S.C. § 77l(2), the complaint fails to identify any registration statements and prospectuses that contain misrepresentations or omissions of material fact. *See Bresson v. Thomson McKinnon Sec., Inc.*, 641 F.Supp. 338, 342 (S.D.N.Y.1986); *Klein v. Computer Devices, Inc.*, 591 F.Supp. 270, 273 (S.D.N.Y. 1984), *modified on other grounds*, 602 F.Supp. 837 (S.D.N.Y.1985); *Lorber v. Beebe*, 407 F.Supp. 279, 285–86 (S.D.N.Y. 1976). Consequently, the court dismisses count three of the complaint.

**D. Pendent State Law Claims: Counts Four and Five**

■ The plaintiffs' final claims are grounded in state law. In count four, the plaintiffs allege common law fraud and deceit, and in count five the plaintiffs set forth allegations of negligent misrepresentation. The court does not reach the merits of these claims as it chooses not to exercise pendent jurisdiction over counts four and five. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

*Conclusion*

For the foregoing reasons, the court finds that the complaint fails to state claims of securities fraud under Section 10(b) and Rule 10b–5 (count one), Section 20(a) of the 1934 Act (count two), and Sections 11, 12 and 15 of the 1933 Act (count three). Furthermore, counts four and five are dismissed in light of the court's decision not to exercise pendent jurisdiction. Accordingly, the defendants' motion to dismiss (filing no. 28) is granted in its entirety.

SO ORDERED.

**RULING ON PLAINTIFFS' MOTION FOR RECONSIDERATION AND REQUEST FOR LEAVE TO AMEND**

In this securities law action, the court dismissed the consolidated amended com-

---

**17.** Although the parties disagree as to whether Rule 9(b)'s particularity requirements also apply to alleged violations of Sections 11 and 12, it appears that when fraud lies at the core of an action under Sections 11 and 12, Rule 9(b) must be satisfied. *Haft*, 755 F.Supp. at 1133. *See* *also Lucia v. Prospect Street High Income Portfolio, Inc.*, 769 F.Supp. 410 (D.Mass.1991); *Moran v. Kidder Peabody & Co.*, 609 F.Supp. 661, 666–67 (S.D.N.Y.1985), *aff'd*, 788 F.2d 3 (2d Cir. 1986).

plaint on December 2, 1991, pursuant to Rules 9(b), 12(b)(1) and 12(b)(6), Fed. R.Civ.P. Under Rules 59(e) and 60(b), Fed. R.Civ.P., the plaintiffs now move for reconsideration of the December 2, 1991 ruling.[1] Specifically, the plaintiffs ask the court to consider their request for leave to amend their complaint, pursuant to Rule 15(a), Fed.R.Civ.P. For the reasons that follow, the motion for reconsideration is granted and the plaintiffs' request for leave to file a second consolidated amended complaint is granted.

### Discussion

■ Under Rule 15(a), "leave [to amend] shall be freely given when justice so requires," and should be granted absent "some justification for refusal." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The liberal amendment policy underlying Rule 15(a) affords the court broad discretion in granting leave to amend and, consequently, a motion for leave to amend should not be denied unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party by virtue of the amendment, ..." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230.

As a preliminary matter, the plaintiffs contend that the court's December 2, 1991 ruling constituted an abuse of discretion to the extent that the court "failed to consider" their request for leave to amend. In its ruling, the court in fact did not address what the plaintiffs term their "explicit" request for leave to amend. Yet this oversight comes as no surprise. The plaintiffs' request for leave to amend was buried in footnote seven on page thirty seven of their memorandum in opposition to the motion to dismiss. The obscure placement of this request was made even more obscure by the hundreds of pages of submissions the court reviewed in preparation for ruling on the motion to dismiss, and the failure of

plaintiffs' counsel to raise the request during nearly two hours of oral argument. The court suggests that, in the future, counsel for the plaintiff move in a more explicit, distinct fashion under Rule 15(a).

■ The defendants argue that the request for leave to amend should be denied because any attempt to amend the consolidated amended complaint would be futile. The court disagrees. While futility of amendment may be one ground upon which a motion for leave to amend may be based, *Foman*, 371 U.S. at 182, 83 S.Ct. at 230; *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1198 (2d Cir.1989), this basis generally has been narrowly construed in the Second Circuit. *See Ryder Energy Distrb. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 783 (2d Cir.1984); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42–43 (2d Cir.1979). *Accord* C. Wright, A. Miller & M. Kane, 6 *Federal Practice and Procedure: Civil*, § 1487 at 637–42 (1990 & Supp.1991) (proposed amendment should be "clearly futile" for denial of leave to amend). Moreover, the court detects no undue delay, bad faith, a dilatory motive or undue prejudice to be engendered by the amendment. Accordingly, the motion for leave to amend is granted.

### Conclusion

For all the reasons stated above, the plaintiffs' motion for reconsideration and request for leave to file an amended complaint (filing no. 51) is granted. The court ordered final judgment in this action on December 6, 1991. Accordingly, the court now orders that judgment be reopened in order to permit the plaintiffs to file a second consolidated amended complaint, which shall be filed no later than thirty days from the date hereof.

SO ORDERED.

■

---

1. The motion for reconsideration should have been made pursuant to Rule 9(e), R.Civ.P.

(D.Conn.).