**SECURITY INSURANCE COMPANY OF HARTFORD, Plaintiff,**

v.

**TRUSTMARK INSURANCE COMPANY, Defendant.**

**Civ. No. 3:01CV2198(PCD).**

United States District Court, D. Connecticut.

April 17, 2003.

---

**26**

Alia L. Smith, Christine Y. Wong, David J. Grais, James L. Hallowell, Kathryn E. Nealon, Mark B. Holton, Gibson, Dunn & Crutcher, Erick M. Sandler, Kathryn C. Ellsworth, Robert J. Morrow, Dewey Ballantine, New York City, Frank F. Coulom, Jr., Marion B. Manzo, Robinson & Cole, Hartford, CT, for Plaintiff.

Amy M. Rubenstein, David Spector, Dennis G. LaGory, Everett J. Cygal, Michael Mullins, Paula J. Morency, Ronald S. Safer, William E. Meyer, Jr., Schiff, Hardin & Waite, Chicago, IL, Jeffrey R. Hellman, Jeffrey M. Sklarz, Zeisler & Zeisler, P.C., Bridgeport, CT, for Defendant.

*RULINGS ON THIRD–PARTY DEFENDANT TIG INSURANCE COMPANY'S MOTION FOR EXPEDITED PROTECTIVE ORDER AND DEFENDANT'S MOTION TO COMPEL FURTHER RESPONSE TO ITS REQUEST FOR PRODUCTION*

DORSEY, District Judge.

Third-party defendant TIG Insurance Company ("TIG") moves for a protective order regarding a letter rogatory issued by defendant against Fairfax Holdings, Ltd. ("Fairfax"), a Canadian company and parent company of TIG. Defendant moves to compel further production by TIG. Familiarity with prior rulings is presumed. For the reasons set forth, TIG's motion for a protective order is **denied** and defendant's motion to compel is **granted in part.**

## I. MOTION FOR PROTECTIVE ORDER

TIG moves for a protective order arguing that a letter rogatory requesting assistance from Canada in seeking evidence from Fairfax was not filed as a motion pursuant to D. Conn. L. Civ. R. 7(a), is procedurally defective pursuant to Fed. R. Civ. P. 7(b)(1),(3) and Fed. R. Civ. P. 11(a), is untimely and is overly broad and seeks production of irrelevant material.

■■■ "Where . . . the [discovery is] relevant, the burden is upon the party seeking . . . a protective order to show good cause." *Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F.2d 371, 391 (2d Cir.1981) (citation omitted); *see also* Fed. R. Civ. P. 26(c); *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir.1992) (burden is on moving party to show good cause). Fed. R. Civ. P. 26(c), however, "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes." *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944–45 (2d Cir.1983).

The present letter rogatory, lacking the force of an order and phrased as a request, was not issued as an order as no treaty provided a basis for such characterization. On reconsideration, the interaction of Fed. R. Civ. P. 28(b), providing that a letter rogatory "shall be issued on application and notice and on terms that are just and appropriate," and Fed. R. Civ. P. 7(b)(1), which provides that "[a]n application to the court for an order shall be by motion," suggests that the more appropriate course would have been by motion.[1]

■■■ As such, the motion for protective order will be construed as both an objection to issuance of the letter rogatory and as a motion for a protective order. A party opposing issuance of a letter rogatory must

---

1. Although this Court concludes that requiring defendant to move for issuance of letter rogatory would have been the more appropriate course as it would have precluded the present motion for a protective order, it is not clear that Fed. R. Civ. P. 7 an Fed. R. Civ. P. 28 require such a conclusion. Motions are required when an *order* is sought. A letter rogatory is more commonly known and identified in Fed. R. Civ P. 28 as a letter of *request*. By definition, the letter is not an order and becomes an order only at the pleasure of the foreign authority, which in this case is not bound by any agreement with the United States to honor the request.

show "good reason" why such letter should not issue. *Zassenhaus v. Evening Star Newspaper Co.,* 404 F.2d 1361, 1364 (D.C.Cir. 1968); *DBMS Consultants Ltd. v. Computer Associates Int'l, Inc.,* 131 F.R.D. 367, 369 (D.Mass.1990); *B & L Drilling Electronics v. Totco,* 87 F.R.D. 543, 545 (W.D.Okla.1978). In determining whether to issue a letter rogatory, evidence sought from the proposed discovery will not be weighed and no attempt will be made to predict whether such evidence will ultimately be obtained through discovery. *DBMS Consultants Ltd.,* 131 F.R.D. at 369.

■ TIG objects to the proposed discovery as untimely, overly broad and seeking production of irrelevant information. In light of the parties' stipulated extension of the discovery deadline to 4/25/03, the first objection is without merit. Nor will the remaining objections suffice to preclude issuance of the letter. Fairfax acquired TIG in April 1999, and in doing so performed due diligence on TIG's operations. The date is sufficiently close to the allegations of the third party complaint to conclude that information generated from Fairfax's inquiry may be relevant to the present claims.

TIG also argues that the due diligence performed encompasses more than the workers compensation insurance involved herein. Assuming arguendo that the request might touch on irrelevant matter, which does not appear to be the case, such would not constitute good reason not to issue the letter seeking otherwise relevant material.

■ An overly broad request may justify issuance of a protective order precluding irrelevant discovery. TIG has not, however, established that the discovery sought is irrelevant to the present claims and defenses. The due diligence performed by Fairfax when it acquired TIG potentially would uncover deficiencies in TIG's business practices and bear relevance to defendant's claims. Nor does the fact that defendant presses its discovery late in the discovery period justify issuance of a protective order. As the discovery period remains open by virtue of the extension sought on consent of all parties, there is no basis on which to deny defendant the discovery sought. TIG has therefore failed to establish a protective order is appropriate. The motion is denied.

## II. DEFENDANT'S MOTION TO COMPEL

Defendant moves to compel production by TIG responsive to its requests for further production.

"[T]he scope of discovery under FED. R. CIV. P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 114 (2d Cir.1992) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). The scope of discovery, however, is not without bounds, and limitations are imposed where the discovery is "unreasonably cumulative or duplicative," overly "burdensome ... [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(2). An order compelling discovery is rendered after consideration of the arguments of the parties, and such order may be tailored to the circumstances of the case. *Gile v. United Airlines, Inc.,* 95 F.3d 492, 496 (7th Cir.1996).

In its requests for production, defendant sought "all correspondence between Security and TIG relating to the Arbitration" (Request 2) and "[a]ll documents produced in the arbitration," (Requ. 3). TIG objected to the requests as irrelevant and confidential material. TIG now alleges that the only information not produced is correspondence pertaining to scheduling details. As such, and as defendant does not argue otherwise in its reply, the motion to compel production is moot as to these requests.

■ Defendant further sought

"all correspondence between AON and TIG relating to the TIG Business or the placement of reinsurance for the TIG Business" (Request 6), "[a]ll analyses of the TIG Business in the possession of TIG or its agents including reports prepared by outside actuaries or consultants" (Request 8), "[a]ll documents relating to the termination of the business relationship between TIG and any other insurance company, fronting company, managing general agent, underwriter or producer in connection with the TIG Business" (Request 17), "[a]ll contracts or reinsurance agreements, including all documents relating to negotiations between TIG and any other insurance company, fronting company, managing general agent, underwriter or producer relating to the TIG business" (Request 18), "[a]ll documents relating to any decision by TIG or its agents or underwriters to reduce rates by 30% in 1996 and 1997 to compete with the then current pricing conditions" (Request 22), "[a]ll documents relating to any decision by TIG or its agents or underwriters to reduce rates in 1998 and 1999 to compete with the then current pricing conditions" (Request 23), "[a]ll documents relating to TIG's decision to sell both loss sensitive products and to underwrite unproven risks as a means to compete with guaranteed cost products being sold by other workers compensation writers" (Request 25), "[a]ll documents relating to TIG's decision to price products by targeting higher loss ratios (i.e. from 55–60% to 65–75%) as respects the TIG Business" (Request 26), and "[a]ll documents relating to the TIG combined loss ratio of 109% for the 1997 underwriting year as referenced by Muirfield Underwriters in their memorandum of February 6, 1998" (Request 28).

TIG objects to the requests as irrelevant, specifically because the allegations identify only one block of insurance, the Virginia Surety Block ("VSC Block"), and the above requests do not pertain to the particular block of insurance. Defendant responds its allegations raise concerns as to more than the VSC Block.

TIG correctly points out that allegations as to the VSC Block are found throughout the third-party complaint with greater frequency than general allegations made as to TIG's operations. Such does not preclude discovery on defendant's allegations as to TIG's motive for committing fraud or why TIG's general business practices could not meet promises made. The VSC Block, although significant, does not paint a complete picture as to TIG's operations, and a fair reading of defendant's complaint does not justify TIG's limited reading of allegations not identifying the VSC Block. The material sought bears potential relevance to claims of fraud and misrepresentation. Contrary to TIG's argument premised on *Ferber v. Travelers Corp.*, 785 F.Supp. 1101 (D.Conn.1991), the discovery sought is not apparently for purposes of maintaining a strike suit to uncover fraud unknown at the time of filing but rather for establishing the scienter element of its claims of fraud or misrepresentation as alleged. It thus cannot be said that experiences in other aspects of TIG's business would have no bearing on a statement made to defendant as its ability to perform a promise made and TIG's capabilities in relation to such promise.

■ PriceWaterhouseCoopers ("PWC") allegedly was TIG's agent hired in October 1996 for purposes of tracking financial data on ceded claims. Defendant sought "[a]ll documents, contracts and correspondence between TIG and PriceWaterhouseCoopers or relating to PriceWaterhouseCoopers' performance of back office functions for TIG," (Request 20), and "[a]ll documents relating to the termination of the business relationship between TIG and PriceWaterhouseCoopers," (Request 21). TIG objected to the requests as overly broad and unduly burdensome.

As with TIG's claim that discovery was appropriately limited to the VSC Block, it is not apparent that TIG's response limiting discovery to PWC's dealings with United States Life Insurance and associated loss reporting would necessarily address systemic problems throughout TIG, albeit different groups within TIG, that would substantiate

claims of fraud. TIG does not contend PWC's loss reporting responsibilities were insignificant elsewhere, thus they may have information relevant to systemic problems within TIG relevant to a claim of fraud or misrepresentation.

Finally, defendant requested "[a]ll files and documents reviewed, prepared or analyzed by the Resolution Group in respect to the TIG Business," (Request 30), and "[a]ll documents referring or relating to Odyssey Re's desire not to produce retrocessional protection for the TIG Business," (Request 31). TIG argues the issue is moot as it has no documents responsive to the requests in its possession.

Defendant argues that Fairfax, TIG's parent company, worked directly with Resolution Group in preparing analyses of the business and TIG has not requested that Fairfax produce the analyses. Although a party must produce "tangible things that are in the possession, custody, or control of the party," FED. R. CIV. P. 26(a)(1)(B), it is not apparent how TIG is responsible for reports generated by and in the possession of its parent company. The separate, corporate structure leaves TIG with no more right to demand a report from Fairfax than defendant.

As to documents pertaining to Odyssey Re, TIG represents that it has produced all documents, defendant argues that it cannot confirm such production and TIG has not cooperated in establishing production of the documents. There is thus no dispute as to TIG's obligation to produce the documents sought, and the parties will ensure that the documents are in fact in defendant's possession.

## III. CONCLUSION

TIG's motion for a protective order (Doc. No. 186) is **denied**. Defendant's motion to compel (Doc. No. 197) is **granted in part** consistent with the foregoing opinion.

SO ORDERED.